Yes, Eric Fong. I'd like to introduce Kevin Jerome Green. He's a professor of law, and if we go really crazy deep into copyright stuff, I would seek the court's permission. He was part and parcel of writing this brief and is probably the person most knowledgeable on that. Yeah, that's fine. Thank you, Your Honor. I've lost many hours of sleep wondering what I'm going to say right now, and I think I figured it out just now. This case, the clear error is that all of this stuff was preempted. Judge Lasnik simply had no authority to use the RCWs of Washington to go down this road and authorize this sale. It was fully briefed. It was told to him before we began through the briefings, and to me, that starts and ends my oral argument. It really does. These issues that we are talking about here are going to, if we go into it, are truly going to rock an apple cart of a multi-billion dollar industry that needs to be thoroughly vetted, analyzed, not to mention these are constitutional rights laid out. These works are. Given Section 301A, it's express writings. It clearly needs to be done in an avenue other than how it was. Again, we start and end with that. I have brought some common law arguments. I took issue with many of these statements that were made in oral argument. I think those speak for themselves. The judicial estoppel argument, again, I believe that is fairly straightforward and speaks for, well, maybe not so straightforward because there's a definition of was Hendrickson Lewis successful or not. I was hoping you'd ask me questions by now. Well, if you're relying on your briefs, we've clearly, carefully read the briefs, so if you don't have anything to add, this judge is content to rely on the briefing. But you don't have to make argument in addition to your briefs. You can just submit your case on that if you want. Well, I'm torn right now. I have to tell you, I'm torn right now. I feel like I'd be doing Mr. Clinton a service, and I wonder what he thinks as he watches right now as I stand here and I rely on my brief and don't, you know, zealous advocacy come up. We've read the briefs carefully, and you'll have an opportunity to respond. Well, I certainly get the sense that I'm going to sit down now, and I will reserve the remainder for rebuttal. Okay. And truly, I do believe this is a simple, straightforward matter. You're relying on the copyright law. What's that? You're relying on copyright law. Well, the brief, as far as authorizing a receiver to sell priceless works of art that are copyright protected, you know, that analysis is absolutely preempted under any type of state avenue to go get it. That's plain as day. So, absolutely, I'm relying on that. But I also believe that the representations that were made in court swayed the court to go down that road, and, you know, that whole process that led up to this is important to that argument and how it played out, but I don't think we need to go there. So, what if the receiver order had merely said that the receiver could marshal the royalties? Well, that's a wonderful question, because would that violate the preemption clause? But let's say that it did that. Wouldn't the court need to certify it to the state supreme court instead of making their airy guess? You know, because none of this has ever been done before. We have no idea what it looks like, how it works, or what should be done. So, your position is that even had Judge Lasnik authorized only that, that he would have erred? Well, I'll have to tell you that we would have been fine. I mean, we were offering significant amounts of this at that point, and I'm sure that the receiver would have come there in the end. You know, and, Your Honor, Judge Fischer, you asked this morning, well, what about a mediator? You know, the offer still stands. But, counsel, my question is a little bit different. Yes. Do you think, and I just want to be very clear. I understand your brief to be arguing that Judge Lasnik erred because you believe that under copyright law, these master recordings can't be sold to satisfy this judgment. That's your position. But my question is, what if the order had simply stopped at authorizing the receiver to marshal the royalties? Do you still think that would have violated the law? Well, what I can tell you is there's no case law that will give me authority to argue that. But what I think unconditionally is that Washington RCWs of this is preempted by federal law. All right. And so, but, you know, having said that, you know, I understand there to be avenues in California that do that and what have you, but what Lasnik could have done and very well probably should have done. Judge Lasnik. I'm sorry, I don't even know what I said. What Judge Lasnik could have said is what? I would like the State Supreme Court to give me guidance. All right. Thank you. Thank you, Mr. Fong. Thank you, Your Honor. And we'll permit you to make further rebuttal argument. After four years of very mixed post-judgment litigation collection efforts, appointment of a receiver to hold and license or sell for sound recordings represents the most substantial hope or possibility for payment of Hendricks and Lewis's judgments against Mr. Clinton. In the district court, Mr. Clinton defended against the request for appointment only on the basis of Section 201E of the Copyright Act. There was no preemption argument, no common law arguments. There was an argument about claim preclusion that was slightly different than the judicial estoppel argument that's made now. But on that, I would like to say that there is no evidence in any of these cases that the Mr. Clinton owns these copyrights. He acquired them in 2005, so they are entirely separate cases. This one is not related to the California proceeding. The applicability of Section 201E appears to be a matter largely of first impression. So far as I'm aware, there are no decisions on Section 201E in this or other circuits. There is an opinion by Judge Kaczynski in 1990 sitting by designation in the United States District Court for the Central District of California in In re Peregrine Entertainment. That case addressed whether federal, the court rather, that case actually dealt with the question, where should someone file a claim to security interest in a copyright? But the court addressed whether federal law insulates copyrights from attachment in state court proceedings and concluded that it did not. As to Section 201, the court concluded that it applies only to actions initiated by government bodies. The court said, the court construes this section as dealing with actions initiated by governmental bodies, not with those where, as in the case of a judgment lien holder, the instruments of government are merely acting in furtherance of private objectives. This would be a ground for affirmance of Judge Lasnik's decision. But Judge Lasnik did not rely on the Peregrine case. He relied on a different ground. That is that Mr. Clinton and the copyrights in question were not subject to the limited protections of Section 201E. The copyrights are subject to execution in Washington, where all property of the debtor is subject to execution unless exempt, and there's been no suggestion that there's any applicable exemption. It has been the law, moreover, for some time that copyrights and patents like other forms of property are subject to execution to pay debts. The case of Ager and Murray, in 18982, the Supreme Court declared it is within the jurisdiction of a court of chancery to assist a judgment creditor to reach and apply to the payment of his debt any property of the judgment debtor not subject to exemption. Clinton failed to offer any evidence that he was an individual author to whom Section 201E's limited protections apply. By contrast, Hendrickson Lewis offered evidence that demonstrate he is not entitled to that protection for the four funcadelic masters at issue here. That evidence includes the copyright certificates, which give a presumption that the facts stated in them are correct, and that had Warner Brothers as the owner under a work-for-hire basis, and also the operative documents among Warner Brothers, Thang, and Mr. Clinton, which support work-for-hire, that Mr. Clinton was Thang's employee, and therefore Thang would have been the owner-employee even if Warner Brothers was not, and there is an assignment of all copyright interests as a transfer or an exclusive license at a minimum to Warner Brothers. Thus, it was entirely appropriate for Judge Lasnik to conclude that the copyrights were subject to execution and that Mr. Clinton was not entitled to the protection of Section 201E.  Thank you. Thank you. Thank you, Ms. Hendricks. Mr. Farr, you've reserved plenty of time for rebuttals, so go ahead. Thank you, Your Honor. I'm not sure it was entirely appropriate. The record before Judge Lasnik was that there were $600,000 available, of which at that point it was $340,000 that had gone their way since the California proceedings had started, and the $300,000 were just sitting around in bank accounts. So is your argument, counsel, that the appointment of receiver was not necessary? I would argue that all of that was going on in the Central District of California and that there was a mechanism going on where Mr. Clinton had offered 50% of all this money, was being overseen, and Hendricks and Lewis appealed a non-final order, and through judicial efficiency, through the judicial estoppel argument, that's right, there was no need to take on this endeavor while it was going on down below. This was well on its way to being done. What's the this, the satisfaction of the judgment? Mr. Clinton had come full circle. He was willing, and these copyrights, it's not chump change. It's a substantial amount of money that's coming in. Well, let me ask you about that because I asked one of the lawyers, but now there have been so many at the podium, I don't know which one, about the status of the California action because Judge Wright's order that directed the royalties were to be deposited in Mr. Clinton's lawyer's account and then 25%, I think, to go to H&L. I think it was one of the H&L's counsel who clarified that no money has been deposited and they haven't seen any money. I believe that the record industries have no idea what to do. Then how does that reconcile with your position that this is well on its way to being done? Because they don't know what to do because of all the appeals and litigation that's going on all over the place at their own choosing. Why doesn't that cry out to Judge Lasnik that a receiver needs to be appointed? To me, I don't disagree with you. I don't disagree with that proposition at all. It makes perfect sense. The problem is that this is something that is preempted by an act of Congress. And so if that's why he wants to, you know. Well, counsel, I'm trying to get at your argument. That's my problem. I understand you have a preemption argument, but when you stood up a minute ago you were starting to talk about $600,000 and that this satisfaction was well on its way to being completed. Hence my question, and it truly is a question, whether your position is that he erred by appointing a receiver at all. And that is, but you see, I mean, look, I'm pretty pragmatic in my life and what you're saying makes perfect sense. But we also work under, you know, in the law of what's the precedence. And so the way I answer that is we certify it to the Washington State Supreme Court instead of making the airy guess so that it can be done in that process that's called for because we don't want these airy guesses on these questions that no one knows what to do. So that's my answer is that it should have been certified. Okay. Where did you ask Judge Lasnik to consider your preemption argument and your certification? Well, the preemption was thoroughly briefed. And as far as the oral argument, you know, that's where I guess maybe I should learn not to rely on my briefs. Maybe I should have gone up there and said, hey, you know, look at that. I'm just asking where you made the preemption argument that you're pressing as dispositive. It's in my brief. I don't have it. It's on page. This is your opening brief? Yeah. Response in opposition to motion to counterclaim where federal statute prohibits. What page are you reading from? It's page. Your Honor, what I will do, I've got it in my. So just to be clear, Counselor, I think you might be talking past each other. Judge Fischer was asking where you made this argument in front of the trial court. He's asking what page I'm getting ready to read from right now. Oh, I thought you said it was the opening brief to our court. No, no, no, no, opening brief to Judge Lasnik. Okay. You're asking to your court. No, no. District court. Okay. What page would that be? Page 117.  Sorry, volume three of the excerpt? Yeah, page 117. Thank you. Just as Judicial Estoppel is fully briefed there, you know, but it's in the plain language of the statute as well. So this is a no-brainer. Okay. You've answered my question. Yeah. Okay. And what about the certification issue? Did you raise that to Judge Lasnik? Did not. Raised it here for the first time. Okay. And, you know, I want to defer to Mr. Green right now, but I really also want to talk a little bit about, you know, some of the statements that were made by counsel. But, again, I will rest on the briefs on those. That's fine. I believe those briefs. You have four minutes. If you want Mr. Green to talk, let's let him have the four minutes. May it please the Court. Kevin J. Green. I'm a law professor in San Diego, and this case presents many unexplored issues of copyright law, which I'm sure would be quite exciting to a panel of judges. An issue is whether the Great American Songbook, the funk portion of it, can be sold like a sack of potato to satisfy the interests of a creditor. Judge Lasnik was dealing in unexplored waters here as well, and I think his intentions were good, but he went seriously astray in a number of portions of the opinion, the first one being the conclusion that Mr. Clinton was never the author of these sound recordings. I would submit that the Rock and Roll Hall of Fame and others might take some characterization of that. Your Honors, there's clear authority here from Community for Nonviolence versus Reed that the failure to underdo the Reed analysis, which would determine whether or not a work is, in fact, a work made for hire under the first proud irreversible error. And the analogy would be a recent case in this court regarding the failure of a court to do the basic sleek craft or Polaroid analysis in a trademark case. The analogy is the same. If you're going to determine that a work is one for hire, you have to do the Reed analysis. That wasn't done. We submit that had the court done that, it would have been very clear. Yes, Your Honor. What was the case you were referring to? Again, that case, I was hoping you wouldn't ask me about anything in the brief, but it's in our reply brief, the last brief that we wrote. It's cited. So I don't know if Mr. Fong can find that. Do you remember the name? Community for Nonviolence versus Reed. No, no, no, not Reed. You're asking about the trademark case and the failure to do the Lanham-Mack analysis, yes. Okay. It's in the last brief that we filed, and I'll try to get that for you. I think it's JADA is the case, J-A-D-A, but I don't remember the rest of it. You can give a slip with the cite to the court reporter after the arguments. Will do, Your Honor. So Reed analysis wasn't undertaken, and I think there's nothing in the record that shows that Mr. I'm sorry, it's JADA Tories versus Mattel, 496F3D, 974, 9th Circuit, 2007. 496F3rd. 496F3D, 974, 9th Circuit, 2007. Thank you. That's an easy basis for this Court to reverse Judge Lastic's decision, at least on the work made for hire issue. Now, the second way, as Your Honors know, that a work made for hire can be effectuated is with a specially commissioned work. The Copyright Act sets forth nine categories of specially commissioned works, and interestingly, sound recordings aren't there. As Your Honors may recognize, there was a big dust-up about this in 2000. It was put in the statute, sound recordings, as one of the categories, and it was taken out. The Congress explicitly said, though, we can't use that here to determine whether they are, in fact, specially commissioned works or not. But I don't think this Court needs to, because Judge Lastic's opinion did not address the specially commissioned prong at all of the work made for hire. Now we get to the hard part, Your Honors, and that is this business of 201E and involuntary transfers. As Ms. Hendricks indicated and also Mr. Fong, there is basically no authority besides Paragon, which was cited, which has been widely panned by everybody who's read it except, I think, Professor Goldstein. But Professors Nimmer and everybody else who have looked at that opinion have said it's not correctly decided. And indeed, Judge Lastic also panned Paragon. He said the Paragon's conclusion that 201E doesn't apply to a judicial body, taking away a copyright, is wrong. So we also don't need to deal with that unless they wish to reverse that part of the opinion. That's actually the part that we agree with. Okay, so how do we decide this issue now? Well, we say that you have to read the Copyright Act as a carefully crafted statutory scheme. And in that scheme, when we look at these provisions, including where 201E is located, 201A, B, C, and D all look to do one thing, to protect the interests of individual authors. And so when in doubt, that's what this Court ought to do. They ought to look to the interests of the individual author and not the corporate author or the individual who's trying to take away the copyright. Professor Green. Yes, sir. I'm afraid your time, the time has expired. We appreciate your argument, but we can study the briefs. I do want to let Hendricks and Lewis, if they want, respond to your argument briefly, because your argument went beyond rebutting what she had argued. Very well, Your Honor. We do appreciate that copyright is an important issue, though. Do you feel you need to respond to anything raised in the rebuttal argument, which turned out to be much longer than the initial argument? Just very briefly, that in this case, I don't think that a read analysis was necessary, because the parties had agreed not only in a way that would support the work for higher analysis, but there was also an assignment of copyright, an assignment of any of the interests, that were not otherwise dealt with. So there was, if Mr. Clinton was the initial author, there was a transfer at the time of the agreements with Warner Brothers. Moreover, even if that weren't treated as an assignment, it would have to be treated at a minimum as an exclusive license, which is also a transfer, because Warner Brothers did get exclusive rights to distribute the Funkadelic Masters. Thank you. Thank you, Ms. Hendricks. I think with that, we will have to bring our arguments to a conclusion. A very challenging set of issues. The last case shall be submitted, and the lawyers will hear from us in due course. Thank you all.
judges: Fisher, Gould, Christen